# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

AiPi, LLC

      Movant,

        v.

Netflix Inc.,

      Respondent.

Case No. 1:24-mc-00002 (LMB/WEF)

---

## BRIEF IN SUPPORT OF AIPI, LLC'S OPPOSITION TO NETFLIX, INC.'S FEDERAL RULE OF CIVIL PROCEDURE AND LOCAL RULE 72 OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER QUASHING NETFLIX'S SUBPOENA TO AIPI, LLC

AiPi, LLC ("AiPi") respectfully submits this brief in support of its Opposition to Netflix's Inc.'s Objections to the Magistrate Judge's Order Quashing Netflix's Subpoena to AIPI, LLC. Netflix, Inc. ("Netflix") issued the subpoena[1] in the pending lawsuit in the Northern District of California, *Lauri Valjakka v. Netflix Inc.,* Case No. 4:22-cv-01490-JST ("*Netflix Litigation*").

## I. INTRODUCTION

This Court quashed three subpoenas issued by Netflix to AiPi. On the first occasion, the Court quashed the subpoena on the grounds that Netflix was seeking to obtain discovery outside of the discovery period. Tr. 16:7-9 (Feb. 23, 2024). With respect to the second-issued subpoena, the Court granted the motion to quash the subpoena on the basis of relevance, and ordered that Netlix is "permitted to issue additional, narrower subpoena(s) consistent with the scope of, and

---

[1] Netflix did not actually serve a valid subpoena, but instead served an "Amended Notice of Document and Deposition Subpoena to AiPi, LLC." *See* ECF 35-2. References to the "third subpoena" or "subpoena" refers to ECF No. 35-2

discovery timelines set in, the underlying litigation in the Northern District of California." Order (Aug. 30, 2024) (ECF No. 31). Rather than make any efforts to obtain the discovery first from the Plaintiff in the underlying case, Lauri Valjakka (hereinafter "Plaintiff" or "Valjakka"), or show why it could not obtain the discovery from the Plaintiff, Netflix fired off a third subpoena to AiPi seven days after the Court quashed Netflix's second subpoena. *See* Exhibit 1.  While one of the six requests/topics did narrow the scope of the subpoena,[2] the remaining five topics actually expanded the scope of the subpoena that had previously been issued. As for the third subpoena, the Court once again quashed the subpoena on the basis of relevance. ECF No. 44-2 at 26:18-27:13. Here, Netflix only objects to the Court's ruling on the third subpoena.

Netflix objects to the Magistrate Judge's order quashing the subpoena on two grounds. *First*, Netflix claims the Magistrate Judge committed an error of law by ruling that a subpoena must be relevant to the claims or defenses in the underlying litigation. ECF No. 44 at 13. Netflix mistakenly believes it can issue a subpoena in the underlying litigation to develop new claims, against new parties which are irrelevant to the existing claims in the underlying litigation.  Netflix is wrong. A subpoena may only seek relevant information consistent with Rule 26, which only permits discovery into "any ***nonprivileged*** matter that is ***relevant to any party's claim or defense*** and proportional to the needs of the case."

*Second*, Netflix argues that "all of the discovery from AiPi is directly relevant to Netflix's claims against Valjakka" and that the "Magistrate does not even address these arguments in his ruling." ECF No. 44 at 17. This new argument raised by Netflix is directly contradicted by the record before the Magistrate, wherein Netflix repeatedly admitted that it issued the subpoena to

---

[2]     Request no. 2 is in line with the scope of discovery permitted by the Northern District of California as it seeks, "Documents regarding the creation and purpose of CDN Licensing and payments to/from CDN Licensing." AiPi agreed to comply with this request.

develop claims against AiPi even though AiPi is not a party in the underlying litigation. ECF No.

37 at 10-15. In fact, we heard it out of Netflix's own mouth why it has zealously pursued third-

party discovery against AiPi:

> ***AiPi may be liable***: (1) under the California Uniform Fraudulent
> Transfer Act ("CUVTA") for its possible participation in or
> dominion over Mr. Valjakka's fraudulent transfers in the underlying
> patent litigation in the Northern District of California ("NDCA
> Litigation"); (2) for some or all of Netflix's attorneys' fees in the
> NDCA Litigation; and (3) for violating Judge Tigar's preliminary
> injunction, enjoining the patentee Mr. Valjakka and those acting in
> concert with Valjakka.

ECF 21 at 1 (emphasis added). Netflix is even clearer in its Notice of Supplemental Information

wherein it states in an email to the plaintiff in the *Netflix Litigation*:

> As we have stated publicly, ***the purpose of the subpoena is to
> determine AiPi's liability under CUVTA***, ***AiPi's liability for
> Netflix's attorneys' fees***, and to ascertain ***whether AiPi violated
> Judge Tigar's preliminary injunction***.

ECF No. 23 at 1 (citing ECF No. 23-1) (emphasis added). Heck, in its briefing before the

Magistrate, Netflix argued:

> That is, Judge Tigar denied joinder [of AiPi in the underlying
> litigation] because Netflix did not plead certain facts regarding a
> potential basis for AiPi's liability.[3] Netflix is now in pursuit of
> evidence of those facts.

ECF No. 37 at 6 (citation to internal pagination). There is no doubt, Netflix issued the subpoena

to AiPi to try to establish claims against AiPi. Indeed, Netflix placed all of its eggs in one basket

by arguing that "Rule 45 discovery upon a third party to assess whether that third party has liability

and should be joined is a common use of Rule 45." ECF No. 37 at 15.

---

[3]     The Northern District Court of California found, ""[b]ecause Netflix does not allege any
transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix
has not stated any right to recover from AiPi as a transferee, initial or otherwise. Therefore, AiPi
is not a necessary party." *Netflix Litigation*, ECF No. 284 at 8.

As such, it is extremely disingenuous and inaccurate for Netflix to now argue that the subpoena was relevant to Netflix's claims against Valjakka, and that the Magistrate did not consider those arguments which were never made by Netflix.  In fact, it was only after the Magistrate Judge indicated that the Court would be quashing the subpoena on relevance grounds did Netflix try to make the new, last-ditch argument that the subpoena sought information relevant to the claims against Valjakka in the *Netflix Litigation*. But even then, Netflix offered nothing more than the conclusory assertion that "all six of these topics are relevant to Valjakka's culpability and its culpability of attorneys' fees." ECF No. 44 (citing ECF No. 44-2 20:10-20, 24:24-25:1).

At this point, it is also necessary to reorient the Court as to the scope of discovery in the *Netflix Litigation*. On September 28, 2023, the Northern District of California granted Netflix leave to "amend its answer to add a single CUVTA Counterclaim." *See Netflix Litigation*, ECF No. 182. On that same day, the Northern District of California granted Netflix's motion to obtain CUVTA discovery but limited it to the following:

> (i) one three (3) hour deposition of Valjakka limited to the CUVTA issue, (ii) one three (3) hour deposition of CDN Licensing's CEO limited to the CUVTA issue, (iii) a single discovery request seeking documents related to the formation and purpose of CDN Licensing, (iv) five (5) interrogatories limited to the CUVTA issue, and (v) five (5) requests for admission limited to the CUVTA issue. Plaintiff shall make the deposition witnesses available in October 2023.

*See Netflix Litigation*, ECF No. 183 (filed in this docket as ECF No. 35-3). Indeed, Netflix was only permitted "a single discovery request seeking documents related to the formation and purpose of CDN Licensing" and one "one three (3) hour deposition of Valjakka limited to the CUVTA issue." *Id.* Yet, as part of its CUVTA discovery, Netflix issued its so-called "narrow subpoena" seeking six categories of documents and Rule 30(b)(6) testimony that vastly exceed the scope of the "single discovery request" and the one deposition of Valjakka. In addition, to seeking discovery

on irrelevant information beyond the scope of the limited CUVTA discovery, the subpoena further infringes into privilege information.

Ultimately, Netflix is not actually using this subpoena to obtain CUVTA discovery against Valjakka. It is instead going on a fishing expedition hoping it may be able to drum up a claim against AiPi. This is an improper use of a third-party subpoena. AiPi is not a party to the *Netflix Litigation* and Netflix has no claims against AiPi under CUVTA or for attorneys' fees in that lawsuit. Whether AiPi has any potential liability as argued by Netflix is not at issue in the *Netflix Litigation*. Thus, the "purpose of the subpoena," as proclaimed by Netflix, is not intended to seek relevant information to any claim or defense in the Netflix Litigation, but instead try to create a claim against AiPi where no such exists.

Thus, the objections to the Magistrate Judge's decision must be overruled.

## II. BACKGROUND ON THE SUBPOENA AND THE NETFLIX LITIGATION

### A. Background on the *Netflix Litigation*

The court in the *Netflix Litigation* summarized the facts and procedural posture in a recent order, which are relevant here:

> This is a patent infringement case against Netflix brought by Plaintiff Lauri Valjakka. Netflix has counterclaimed for a judgment that Netflix does not infringe the patents at issue; that both patents are invalid for lack of inventive concept, obviousness, and other reasons; that one of the patents at issue is unenforceable due to inequitable conduct; that Plaintiff's claims are barred by the doctrine of unclean hands; and for violation of the California Uniform Voidable Transactions Act ("CUVTA"), Cal. Civ. Code §§ 3439 *et. seq.* With regard to the CUVTA claim, Netflix alleges that Valjakka created an entity called CDN Licensing for the purpose and with the effect of diverting settlement proceeds from other patent litigation to avoid paying creditors, including Netflix.

*Netflix Litigation*, ECF No. 284 at 1 (internal ECF citations omitted) (filed on this Court's docket at ECF No. 26-1). Netflix then filed a motion for a preliminary injunction on the CUVTA claim,

which the court granted finding that: (1)  Valjakka had granted a license to the rights for the patents at issue in the case, including litigation proceeds, to a company he owned, CDN Licensing; (2) Netflix is a "creditor" based on the attorney fees it is seeking under 35 U.S.C § 285; and (3) Valjakka transferred the assets (e.g. the license to the patents) with fraudulent intent and no legitimate supervening purpose. *Netflix Litigation*, ECF No. 204 at 2-10.

Netflix then filed a motion to join Valjakka's litigation funder, AiPi, to the lawsuit and to hold AiPi and Valjakka in contempt of the preliminary injunction. *See generally, Netflix Litigation*, ECF No. 284 (filed on this Court's docket at ECF No. 26-1). The California Court denied both motions, finding that Netflix failed to meet its burden that Valjakka transferred assets after the issuance of the preliminary injunction, and that AiPi aided and abetted in any such transfers. *Netflix Litigation*, ECF No. 284 at 5-6 (filed here at ECF No. 26-1). The court further denied Netflix's motion to join AiPi finding that "[b]ecause Netflix does not allege any transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix has not stated any right to recover from AiPi as a transferee, initial or otherwise. Therefore, AiPi is not a necessary party." *Netflix Litigation*, ECF No. 284 at 5-6 (filed here at ECF No. 26-1).

**B. Background on AiPi**

"AiPi is a legal support company" that provides litigation assistance and third-party litigation funding. *Netflix Litigation*, ECF No. 233-1 at ¶¶ 14-16, 26. AiPi entered into an agreement with Valkjakka to provide such litigation support and third-party funding for his litigation. *Netflix Litigation*, ECF No. 233-1 at ¶¶ 14-26; *see also* Morehouse Decl. (ECF No. 17-2). Valjakka entered into a funding agreement with AiPi on September 15, 2021 ("Funding Agreement") and signed a Litigation Plan on September 19, 2021. *See* Morehouse Decl. at ¶ 5 (ECF No. 17-2). In the Funding Agreement, Valjakka and AiPi agreed that they shared a "common

legal interest" in pursuing claims against potential infringers for purposes of sharing work product and privileged information. Morehouse Dec. at ¶ 5 (ECF No. 17-2).   Valjakka and AiPi further agreed that privileged information and work product would be disclosed to AiPi with the understanding and agreement that the privileges would not be waived, and that both parties agreed to uphold the privileges with respect to information disclosed between Valjakka and AiPi. *Id.* at ¶ 6. Indeed, privileged information and work product were only shared with AiPi because there was an agreement that the information would be maintained as confidential and privileged. *Id.*

Valjakka further stated that lawyers at AiPi assisted Valjakka in preparing work product and assistance in his litigation. *Netflix Litigation*, ECF No. 251-1 at ¶¶ 3-4.[4] Valjakka confirmed that he shared information with AiPi understanding that it would be confidential and privileged, and that disclosure of such would harm his case. *Netflix Litigation*, ECF No. 251-1 at ¶¶ 3-4, 14. In addition, Valjakka affirmatively asserted the privilege as to information subpoenaed by Netflix. ECF No. 23-1.

### C. The Subpoena

The California court permitted Netflix to take "minimal, targeted CUVTA discovery," limited to the following:

> (i) one three (3) hour deposition of Valjakka limited to the CUVTA issue, (ii) one three (3) hour deposition of CDN Licensing's CEO limited to the CUVTA issue, (iii) a single discovery request seeking documents related to the formation and purpose of CDN Licensing, (iv) five (5) interrogatories limited to the CUVTA issue, and (v) five (5) requests for admission limited to the CUVTA issue. Plaintiff shall make the deposition witnesses available in October 2023.

---

[4]   Valjakka further stated that AiPi's lawyers worked as his lawyers. *Netflix Litigation*, ECF No. 251-1 at ¶ 3. AiPi disputed this. *See also Netflix Litigation*, ECF No. 233-1 at ¶ 7.

It is also worth noting that Valjakka and AiPi agreed that Valjaka retained all control over the conduct of his claim. Morehouse Decl at ¶ 7 (ECF No. 17-2).

*See Netflix Litigation*, ECF No. 183 (filed on this Court's docket at ECF No. 35-3). Despite the limited discovery that has been ordered, Netflix issued its third subpoena to AiPi which goes well beyond the bounds of the permissible CUVTA discovery. Indeed, as discussed above, Netflix previously admitted that the "***the purpose of the subpoena is to determine AiPi's liability under CUVTA***, ***AiPi's liability for Netflix's attorneys' fees***, and to ascertain ***whether AiPi violated Judge Tigar's preliminary injunction***" ECF No. 23 at 1 (citing Exhibit A) (emphasis added).

Netflix's third iteration of the subpoena sought the following documents and testimony from a Rule 30(b)(6) witness:

**DOCUMENTS SOUGHT**

1. All agreements and drafts of same between AiPi and persons/entities with a financial interest in Valjakka's Campaign, e.g., Lauri Valjakka, Ramey LLP, Kenealy Vaidya, LLP, IP Case Group 1 LLC, and investors in Valjakka's Campaign.

2. Documents regarding the creation and purpose of CDN Licensing and payments to/from CDN Licensing.

3. Any presentations prepared, presented, or provided by AiPi to potential investors related to Valjakka's Campaign.

4. Any emails between AiPi and Ramey LLP and/or Erick Robinson regarding material litigation decisions including any discussion between Ramey LLP and AiPi regarding:

    a. The decision to file or maintain suit against Netflix;

    b. Mr. Robinson's withdrawal as counsel;

    c. The alleged validity of the Asserted Patents;

    d. Alleged Infringement by Netflix;

    e. CDN Licensing;

    f. CUVTA;

    g. Standing (or the ownership of the Asserted Patents, including the litigation in Finland regarding same)

    h. Attorneys' fees risks/concerns (including sanctions and Section 285 fees)

5. Any communications to or from AiPi related to attorneys' fees or sanctions in the Valjakka Campaign.

6. All documents showing payments to any person/entity of the Enforcement Assets.

**DEPOSITION TOPICS**

The same 6 above.

ECF No. 35-2 at 11. And Netflix has remained consistent on one point, it continues to assert that this discovery is relevant to "whether AiPi shares in any of the relevant culpability or liability." *See* ECF No. 35-2 at 11-12.

Of those topics, AiPi agreed to produce documents as to request no. 2. The remaining topics are beyond the scope of discovery in the underlying litigation, unduly burdensome, irrelevant and/or privileged as described below.

The principal place of business of AiPi is in Vienna, Virginia (ECF No. 17-2 at ¶ 4) and the compliance with the subpoena is in Reston, Virginia (Exhibit 1). Accordingly, this Court has jurisdiction over the enforcement of the subpoena and this Motion, which Netflix does not dispute.

## III. ARGUMENT

**A. Netflix's Subpoena Seeks Irrelevant Information and is Issued for an Improper Purpose**

**1. A Subpoena May only Seek Information Relevant to the Claims or Defenses in the Underlying Case**

In litigating its prior subpoena issued to AiPi, Netflix identified its motive in issuing the subpoena to AiPi: "***the purpose of the subpoena is to determine AiPi's liability under CUVTA, AiPi's liability for Netflix's attorneys' fees***, and to ascertain ***whether AiPi violated Judge Tigar's preliminary injunction***." ECF No. 23 at 1 (citing Exhibit A) (emphasis added). Within the text of the third subpoena, Netflix claims the discovery sought is relevant as to "whether AiPi shares in any of the relevant culpability or liability." *See* ECF No. 35-2 at 11-12. And then in briefing the motion to quash, Netflix argued:

> Judge Tigar denied joinder [of AiPi in the underlying litigation] because Netflix did not plead certain facts regarding a potential basis for AiPi's liability. Netflix is now in pursuit of evidence of those facts.

ECF No. 37 at 6.

But a party may only obtain discovery "regarding any **nonprivileged** matter that is **relevant** to any party's **claim or defense** and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1).  AiPi is not a party to the *Netflix Litigation* and Netflix has no claims against AiPi under CUVTA or for attorneys' fees in that lawsuit.

And this is especially important because the court in the *Netflix Litigation* has already rejected Netflix's attempts to join AiPi in the *Netflix Litigation*. Indeed, Netflix moved to join AiPi to the *Netflix Litigation*, but the court there denied the motion finding that "[b]ecause Netflix does not allege any transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix has not stated any right to recover from AiPi as a transferee, initial or otherwise. Therefore, AiPi is not a necessary party." *Netflix Litigation*, ECF No. 284 at 8 (filed here at ECF No. 26-1). The court further denied Netflix's motion for contempt wherein it alleged that AiPi violated the preliminary injunction. The court found there was no evidence that AiPi aided and abetted any such transfers in violation of the preliminary injunction. *Netflix Litigation*, ECF No. 284 at 5-6 (filed here at ECF No. 26-1).

Furthermore, although the court did not reach the question of personal jurisdiction, the court in the *Netflix Litigation* found that if it did, it would find "it does not have jurisdiction over AiPi because Netflix has not shown that AiPi did anything 'causing harm that [it] knows is likely to be suffered in the forum state.'" *Id.* 8 (citing *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452 (9th Cir. 2024)).[5]

As such, the court firmly rejected Netflix's efforts to inject AiPi into the *Netflix Litigation*. Dissatisfied with that decision, Netflix has continued to issue subpoenas to AiPi, not related to any

---

[5]     It begs the question, if there is no personal jurisdiction over AiPi in California how could the California Uniform Voidable Transactions Act possibly apply to AiPi?

claim or defense in the litigation, but instead to determine whether AiPi has any liability towards Netflix. This is improper. If Netflix had a viable claim against AiPi, then the court would have granted Netflix's request to join AiPi in the litigation. But it did not. Accordingly, whether AiPi has any liability towards Netflix is not relevant to any claim or defense in the *Netflix Litigation*.

Thus, the Magistrate Judge correctly quashed the subpoena because it did not seek relevant information or documents and was issued for an improper purpose. *In re ThompsonMcMullan, P.C.*, Civil Action No. 3:16-MC-1, 2016 U.S. Dist. LEXIS 35172, at *18 (E.D. Va. Mar. 17, 2016) ("subpoenas must impose parameters limiting the subpoena's scope to evidence relevant in the underlying litigation. Without such parameters, the subpoena is overbroad or seeks irrelevant information and imposes an undue burden."); *Trans Union, LLC v. Scroggins*, No. 3:24-mc-2-MHL-SLS, 2024 U.S. Dist. LEXIS 162265, at *10 (E.D. Va. Sep. 9, 2024) ("Rule 26 of the Federal Rules of Civil Procedure also governs the use of subpoenas…material sought in discovery must be both relevant to any party's claim or defense and proportional to the needs of the case.").

Here in its Objections, Netflix claims this is legal error. Netflix is wrong. In making this argument, Netflix ignores the text of Rule 26, which states "Parties may obtain discovery regarding any nonprivileged matter that is ***relevant to any party's claim or defense*** and proportional to the needs of the case." Netflix further ignores the above-cited cases from this Court. Instead, Netflix relies upon a decision from the Northern District of West Virginia District Court from 2000 for the generic principle that the scope for relevancy is "broad, such that relevancy encompasses any matter that bear or may bear on any issue that is or may be in the case." ECF No. 44 at 14 (citing *Kidwiler v. Progressive Paloverde Ins. Co*., 192 F.R.D. 193, 195 (N.D.W. Va. 2000)). Leaving aside that the 24-year old case outside this District cited by Netflix predates the current iteration of Rule 26, Netflix's argument cannot be reconciled with the fact that the plain text of Rule 26

requires that discovery be limited to the claims or defenses within the case. Netflix's suggestion

that the Magistrate Judge committed legal error by relying upon the language of Rule 26, and the

caselaw of this District, which all require that discovery be limited to the claims and defenses of

the case, is absurd.

Next, Netflix argues that "[i]n the fraudulent transfer context, courts have permitted a party

to take discovery over transferees like AiPi." ECF No. 44 at 15. The problem here is that it has

already been adjudicated in the *Netflix Litigation* that AiPi is not a transferee:

> According to Netflix, AiPi is the "initial transferee" because AiPi
> exercises "dominion" over the settlement proceeds—that is, AiPi
> has the authority to distribute Enforcement Assets. ECF No. 217 at
> 5–6. Netflix claims that the Court cannot provide complete relief in
> AiPi's absence because AiPi, as the initial transferee of Enforcement
> Assets, is strictly liable for damages under the CUVTA. *Id.* (citing
> *In re Matter of Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir.
> 2017)2). "[I]f Netflix proves that Valjakka fraudulently transferred
> Enforcement Assets, Netflix may also recover against the 'initial
> transferee,' i.e., AiPi
> …
> In Netflix's counterclaim, ***there is no allegation of any transfer
> from Valjakka to AiPi after Valjakka became aware of Netflix's
> contingent claim for attorney's fees. Nor is there any such
> allegation in Netflix's motion for joinder***.
> …
> Nor does Netflix allege when AiPi received any transfer. ***Because
> Netflix does not allege any transfer from Valjakka to AiPi after
> Valjakka's potential liability to Netflix became known, Netflix has
> not stated any right to recover from AiPi as a transferee, initial or
> otherwise***

*Netflix Litigation*, ECF No. 284 at 6-8 (emphasis added) (filed on this Court's docket at ECF No.

26-1). So this is just a factually inaccurate statement by Netflix.

And finally, Netflix argues that a party may issue a subpoena to "third-parties to assess

their liability." ECF No. 44 at 15 (citing *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 262 (3d

Cir. 2013); and *Tarashuk v. Orangeburg Cnty.*, No. 5:19-cv-02495-JMC, 2022 WL 473231, at *5

(D.S.C. Feb. 15, 2022)). Netflix should have read those cases a little closer. In *Tarashuk*, the defendant Alison Harmon, an EMS worker, moved to quash a subpoena directed at her medical records to determine if she were under the influence of drugs at the time of her employment and/or at the time of treating the decedent in a wrong death case. *Tarashuk*, 2022 U.S. Dist. LEXIS 27398, at *3. The court allowed the discovery finding, in part, "that evidence could also support Plaintiff's arguments regarding the liability of Defendant's employers and supervisors in her hiring or continued employment." *Id.* at *17. Netflix cites this language as its ace in the hole that the court allowed discovery to establish the liability of a third party, the Defendant's employer. But Netflix did not read the case close enough. Defendant Harmon's employer was already a defendant in the case. *Id.* at *1. It just was not involved in the dispute before the court.

Similarly, Netflix snagged a quote out of a parenthetical buried within a citation to a 1985 Illinois bankruptcy case contained within a footnote in *Simon* to argue it can issue a subpoena to a third party to determine its liability.  ECF No. 44 at 15 (citing *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 262 (3d Cir. 2013). In *Simon*, however, the issue was the applicability of a Rule 2004 examination in the "pre-litigation stage of a bankruptcy case." How that has any applicability here is unclear. But at the end of the day, that is the best Netflix could come up with when it inaccurately accused the Magistrate Judge of committing legal error.

And finally, Netflix continues its nation-wide search of unreported decisions by citing to *Nasufi*. ECF No. 44 at 16 (citing *Nasufi v. King Cable, Inc*., No. 3:15-cv-3273-B, 2017 WL 3334110 (N.D. Tex. Aug. 4, 2017)). But again, Netflix did not read the entire case. *First*, *Nasufi* involved successor liability under the FLSA, meaning that under the FLSA, the successor company assumes all obligations of the initial employer/defendant. The claim remains the same, it is just a matter of figuring out the identity of the correct Defendant. But more importantly, *Nasufi* held,

"[u]nder Rule 26(b)(1) and Fifth Circuit case law, discovery requests must seek information that is relevant to the parties' claims or defenses as pleaded and may not be used only to find new claims or defenses." *Nasufi v. King Cable, Inc*., No. 3:15-cv-3273-B, 2017 U.S. Dist. LEXIS 123088, at *16-17 (N.D. Tex. Aug. 4, 2017). Accordingly, *Nasufi* undermines the entire basis of Netflix's objections.

At bottom, the Magistrate Judge correctly quashed Netflix's subpoena as it was not directed at information relevant to the claims or defenses in the case, but instead directed at establishing the liability of AiPi.

### 2. The Subpoena does Not Seek Information Relevant to the Claims or Defenses in the Underlying Litigation

In objecting to the Magistrate's order quashing the subpoena, Netflix raises an entirely new argument that "all of the discovery sought from AiPi is directly relevant to Netflix's claims against Valjakka." ECF No. 44 at 17. Leaving aside that this new argument requires us to ignore the vast history of statements by Netflix unequivocally stating that the purpose of the subpoena is to establish the liability of AiPi, even if we were to entertain this alternative universe that Netflix seeks to now create, the argument still fails.

Let's take a look at Netflix's CUVTA claim and unpackage what it is actually suing Valjakka for. In its Counterclaim, Netflix alleges that "Valjakka created CDN and the CDN licenses [sic] to move and shelter money earned from his litigation campaign in order to fraudulently place his assets beyond the reach of creditors, including Netflix." *Netflix Litigation*, Counterclaim at ¶ 134 (ECF No. 192). In other words, Netflix is claiming that Valjakka took money he received from litigation and fraudulently transferred that money to CDN Licensing to place that money beyond the reach of creditors. There is no allegation that AiPi had anything to

do with the creation of CDN Licensing or any transfers to CDN Licensing.  So, what is AiPi's

connection to Valjakka? The California Court succinctly summarized it as follows:

> AiPi "agreed to engage a law firm to file a Complaint and initiate
> the Valjakka litigation." ECF No. 233-1 ¶ 13. AiPi also "agreed to
> support the Valjakka litigation and manage third-party funding." *Id.*
> ¶ 14. He notes that AiPi "has assisted counsel in the production of
> Valjakka documents . . . including the collection of documents from
> Valjakka, the marking of documents and providing documents to
> counsel for Defendant." *Id.* ¶ 26. He explains that AiPi managed the
> settlement funds from prior defendants "totaling $1,285,500." *Id.* ¶
> 28. From this amount, he states that AiPi paid $295,539 to Ramey
> LLP, $267,594.76 to experts, $393,911 to investors in the litigation,
> and $258,500 to Valjakka. *Id.* ¶¶ 30–33.

*Netflix Litigation*, ECF No. 284 at 2 (filed on this Court's docket at ECF No. 26-1). AiPi's

involvement in funding and assisting Valjakka's litigation did not, and does not, subject it to any

liability under CUVTA. Indeed, the California Court expressly ruled, "Netflix does not allege any

transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix

has not stated any right to recover from AiPi as a transferee." *Netflix Litigation*, ECF No. 284 at

8.  At bottom, AiPi transferred $258,500 to Valjakka. Netflix does not claim this transaction falls

within CUVTA, nor does Netflix allege that the debtor (Valjakka) transferred any assets to AiPi,

which would fall under CUVTA. And ultimately, "AiPi has not transferred any settlement

proceeds to CDN." ECF No. 17-2 at ¶ 9.

Importantly, the sole remedies available to Netflix under CUVTA is "the avoidance of the

transfer" and attachment of the fraudulently conveyed asset. Cal Civ Code § 3439.07. Netflix has

not alleged in its Counterclaim that Valjakka transferred any asset to AiPi that could be avoided

under Cal Civ Code § 3439.07. Moreover, with the exception of request no 2, Netflix has not

demonstrated how any of its requests could lead to information relevant to a fraudulent transfer of

any asset by Valjakka. Let's take a look at each of the requests to see how it relates to Netflix's CUVTA claim.

In request no. 3, Netflix seeks "Any presentations prepared, presented, or provided by AiPi to potential investors related to Valjakka's Campaign." How could this possibly lead to evidence of a fraudulent transfer by Valjakka? Netflix is simply on a fishing expedition to obtain discovery on the litigation investors. This is irrelevant to its CUVTA claim.

Similarly, request no. 1 seeks "All agreements and drafts of same between AiPi and persons/entities with a financial interest in Valjakka's Campaign, e.g., Lauri Valjakka, Ramey LLP, Kenealy Vaidya, LLP, IP Case Group 1 LLC, and investors in Valjakka's Campaign." Again, if AiPi has an agreement with an investor, how does this possibly prove or disprove a fraudulent transfer by Valjakka? It does not.

Request no. 4 seeks, "Any emails between AiPi and Ramey LLP and/or Erick Robinson regarding material litigation decisions…" In addition to seeking privileged information (discussed below), this overbroad request essentially seeks the same information requested by the last subpoena and should be quashed for those same reasons. But this subpoena request goes further by seeking "decision to file or maintain suit against Netflix;" the withdrawal of counsel; the "alleged validity of the Asserted Patent;" "[a]lleged infringement by Netflix;" and "standing." How does this relate to whether Valjakka fraudulent conveyed his assets? It does not. It is a transparent attempt to unearth privileged information that Netflix cannot obtain in the underlying litigation.

And Request no. 5 seeks "[a]ny communications to or from AiPi related to attorneys' fees or sanctions in the Valjakka Campaign." This has no relevance as to whether Valjakka fraudulently transferred assets to CDN Licensing as Netflix claims. And as explained below, it also seeks

privileged information covered by the common interest privilege. What Netflix should be seeking is information relating to the transfer of assets to CDN licensing, which is what the Northern District of California limited the CUVTA discovery to.

And finally, in request no. 6, Netflix is seeking "[a]ll documents showing payments to any person/entity of the Enforcement Assets." Netflix has its CUVTA claims backwards. Transfers to Valjakka are not covered by CUVTA. And if AiPi transferred money to investors or paid litigation expenses, that would not be covered by CUVTA because it is not a transfer of Valjakka's assets. Again, this is simply Netflix's attempt to get discovery into the investors of the litigation for which it is not entitled. It is not relevant to Netflix's claims.

In its objections, Netflix limps through each of its specific requests to try to explain why the information it seeks is relevant. ECF No. 44 at 17-20. Netflix offers a variety of rationales for each of the requests that boils down to the following—the information is relevant to: (1) establish the liability of AiPi; (2) AiPi's knowledge of the risk of potential attorney fees; (3) whether AiPi had "dominion over Valjakka's campaign and the CUVTA-related assets;" and (4) "Valjakka's share of CUVTA liability"(or what it previously referred to as "ratio of liability") vis-à-vis the liability of AiPi. Each will be addressed below.

*First*, as addressed above, a subpoena cannot be issued to a third party to try to come up with evidence against that third party to build a claim against that third party. The question of whether AiPi has any liability to Netflix is irrelevant to the claims in the *Netflix Litigation*. The California Court has already ruled squarely that Netflix has failed to allege any claim against AiPi, thereby denying Netflix's request to join AiPi in the underlying litigation. Netflix can only issue a subpoena to obtain information relevant to the claims in the case. It has no claims against AiPi in the case. Thus, the subpoena seeks irrelevant information.

*Second*, AiPi's knowledge of the risk of potential attorney fees under 35 U.S.C. § 285 is completely irrelevant to Netflix's CUVTA claim and its claim for attorney fees. Is it unclear what Netflix's angle is here. Is it claiming that AiPi failed to inform Valjakka of the fee shifting provision under 35 U.S.C. § 285 and Valjakka therefore has a claim against AiPi? If so, that has no relevance to Netflix's CUVTA claim or its claim for attorney fees against Valjakka. Eventually, Netflix argues that "if Valjakka was warned of the risk of attorneys' fees before or early in the NDCA Litigation, a larger amount of fraudulently transferred assets can be enjoined." ECF 44 at 18-19. This is tantamount to a fishing expedition and also falls flat because there is only an allegation of one transfer from Valjakka to CDN licensing.

*Third*, Netflix repeatedly claims AiPi has "dominion" over Valjakka's campaign, and so the information sought is relevant to answering that question. It is as though Netflix is claiming if AiPi had "dominion" over Valjakka's litigation against Netflix, then AiPi is vicariously liable to Netflix.  On the surface, that sounds compelling, but it is actually nothing more than an empty platitude that has zero relevance in the *Netflix Litigation*.  While the word "dominion" appears six times in Netflix's Opposition before the Magistrate, and two times here in its objections, there is only a single legal citation with respect to "dominion." ECF No. 37 at 6 (*See Henry v. Official Comm. of Unsecured Creditors of Walldesign, Inc. (In re Walldesign, Inc.),* 872 F.3d 954, 963 (9th Cir. 2017). And remarkably, *In re Walldesign, Inc.* is not a patent case involving attorney fees under 35 U.S.C. § 285 nor is it a CUVTA case. Instead, it is a bankruptcy case. And while it involves fraudulent transfers under the bankruptcy code, it is entirely inapposite to Netflix's claims and defenses in the underlying litigation. In *In re Walldesign, Inc.* the question of "dominion" only arises to determine if a "transferee" of a fraudulent transfer had "dominion" over the money or asset it received. And remarkably, Judge Tigar rejected this identical argument in the *Netflix*

*Litigation. Netflix Litigation*, ECF No. 284 at 8 (filed here at ECF No. 26-1). As Judge Tiger aptly found, "[b]ecause Netflix does not allege any transfer from Valjakka to AiPi after Valjakka's potential liability to Netflix became known, Netflix has not stated any right to recover from AiPi as a transferee, initial or otherwise. Therefore, AiPi is not a necessary party." *Id.* In other words, Netflix has not alleged that Valjakka transferred any asset to AiPi to avoid liability to Netflix. Without any allegation that AiPi is a "transferee"[6] or there was a fraudulent transfer to AiPi, the question as to whether AiPi has "dominion" over any such nonexistent transfer is irrelevant and illogical.

*Finally*, Netflix repeatedly refers to the "share of liability" or "ratio of liability" between Valjakka and AiPi, as if they were joint tortfeasors in a comparative negligence jurisdiction, as another basis for relevance. *See* ECF No. 35-2 at 11-12; *see also* ECF 37 at 9; *see also* ECF 44 at 16, 18. But as explained above, under CUVTA, the only relief Netflix can obtain is the avoidance of a fraudulent transfer.  Cal Civ Code § 3439.07. So, there is no "ratio of liability" or "share of liability" under CUVTA or any other claim or defense in the *Netflix Litigation*.

Thus, Magistrate Judge correctly quashed the subpoena because it does not seek relevant information or documents and is issued for an improper purpose. Netflix's objections must be overruled.

### B.  Alternative Grounds to Quash the Subpoena

Although the Magistrate Judge only quashed the subpoena on the basis of relevance, the subpoena can alternatively be quashed on the based that it is beyond the scope of permitted discovery, it is unduly burdensome, and it seeks privileged information.

---

[6]    Quite the opposite, Netflix alleged in its Counterclaim, CDN Licensing is the transferee of the fraudulent transaction.

**1. The Information Sought by the Subpoena is Beyond the Scope of Permitted Discovery in the Underlying Litigation**

In granting AiPi's prior motion to quash, this Court ordered that Netflix could issue a "narrower subpoena(s) consistent with the scope of, and discovery timelines set in, the underlying litigation in the Northern District of California." *See* ECF No. 31.  Netflix did not heed this Court's instruction. Instead, Netflix issued a broader subpoena that went beyond the bounds of the "minimal, targeted CUVTA discovery" permitted by the Northern District of California. *See Netflix Litigation*, ECF No. 183. Indeed, the Northern District of California only permitted "minimal, targeted CUVTA discovery," limited to the following:

> (i) one three (3) hour deposition of Valjakka limited to the CUVTA issue, (ii) one three (3) hour deposition of CDN Licensing's CEO limited to the CUVTA issue, (iii) a single discovery request seeking documents related to the formation and purpose of CDN Licensing, (iv) five (5) interrogatories limited to the CUVTA issue, and (v) five (5) requests for admission limited to the CUVTA issue. Plaintiff shall make the deposition witnesses available in October 2023.

*Id.* So, although Netflix was only permitted to propound "a single discovery request seeking documents related to the formation and purpose of CDN Licensing," it issued a subpoena containing six document requests that go well beyond the "formation and purpose of CDN Licensing." Similarly, the "minimal, targeted CUVTA discovery" permitted two depositions, one of Valjakka and the other of CDN Licensing's CEO, with each deposition limited to two hours and to the "CUVTA issue." *Id.*  And yet before this Court is Netflix's third subpoena to AiPi, which seeks a corporate deposition of AiPi on topics that extend beyond the scope of the discovery order in the underlying litigation. By way of example, Netflix is now seeking "[a]ny presentations prepared, presented, or provided by AiPi to potential investors related to Valjakka's Campaign." ECF No. 35-2 at Request no. 3. This was not requested in either previously issued subpoena.

Despite the fact that there is no mention of the issuance of a subpoena to AiPi in the "minimal, targeted CUVTA discovery" order, AiPi is not challenging the subpoena on that basis. But, at a minimum, the subpoena to AiPi should be modified to align the scope of the permitted CUVTA discovery with the subpoena issued to AiPi. Accordingly, because Netflix was only permitted to propound "a single discovery request seeking documents related to the formation and purpose of CDN Licensing," the subpoena, at a minimum should be modified so that it is limited to "documents related to the formation and purpose of CDN Licensing." Because AiPi agreed to comply with this request, the Court's analysis can end here.

### 2. The Subpoena is Unduly Burdensome as the Information Sought by the Subpoena can be Obtained from the Plaintiff in the Litigation

The Fourth Circuit has a "heightened standard for subpoenas issued to nonparties" that considers "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Sziber v. Dominion Energy*, Civil Action No. 3:20-cv-117, 2021 U.S. Dist. LEXIS 250163, at *7 (E.D. Va. Sep. 14, 2021) (quoting *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (hereinafter "*Jordan*"). In assessing the burden on the subpoenaed party, the court should "consider what information is available to the requesting party from other sources." *Jordan*, 921, F.3d at 189.  The Fourth Circuit held:

> ***To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation*** — or, in appropriate cases, from other third parties that would be more logical targets for the subpoena

*Id.* (emphasis added). Indeed, "if the party seeking discovery can obtain the information from another party in the litigation, it must do so rather than burden a nonparty with a subpoena request." *Sziber*, 2021 U.S. Dist. LEXIS 250163, at *7-8.

Here, we know Netflix has not made any attempts to obtain the information sought by the subpoena from the Plaintiff in the underlying litigation, because it was only authorized by the court there to a "single discovery request seeking documents related to the formation and purpose of CDN Licensing." *See Netflix Litigation*, ECF No. 183. And given the fact that Netflix reissued the subpoena a mere 7 days after the Court quashed the last subpoena, it is clear Netflix made no additional efforts to obtain the discovery from the Plaintiff in the underlying litigation nor has it sought to modify the order permitting "minimal, targeted CUVTA discovery."

Knowing this was an issue with the last subpoena, it was expected and anticipated that Netflix would use the opportunity afforded to it by this Court to first attempt to obtain this same information from the Plaintiff in the underlying litigation prior to reissuing the subpoena. But Netflix squandered this opportunity by hastily reissuing a new, overbroad subpoena seven days after the Court quashed the last one. In short, the doors to third-party discovery are not opened until Netflix has first exhausted its ability to obtain the same discovery from the Plaintiff. Netflix has failed to demonstrate why it cannot seek this discovery from the Plaintiff in the underlying litigation. Thus, the subpoena must be quashed.

The only request seeking documents that could be outside the possession of Valjakka is request no. 3, which seeks "presentations prepared, presented, or provided by AiPi to potential investors related to Valjakka's Campaign." ECF No. 35-2 at 11. But this request too fails because it seeks information that "invad[es the] privacy or confidentiality" interests of AiPi[7] and seeks irrelevant information as explained below.

### 3.   The Documents, Communications, and Information Sought by Netflix are Privileged as they Seek Information "Regarding Material Litigation Decisions" (Request No. 4-5)

---

[7]      *Jordan*, 921, F.3d at 189.

In the *Netflix Litigation*, Netflix intends to seek attorney fees as a prevailing party at the conclusion of the case under 35 U.S. Code § 285. No such attorney fees have been awarded yet, as AiPi understands. Nevertheless, Netflix has then used that claim for fees as a basis to assert a CUVTA claim against Valjakka. Using the CUVTA claim as a foothold, Netflix is now trying to obtain all communications between its opposing party (Valjakka), his counsel, and his litigation funder "***regarding material litigation decisions***." *See* Exhibit 1 at 11 (emphasis added).

The documents or communications Netflix is seeking "regarding material litigation funding decision" and "sanctions" in the underlying litigation are protected by the attorney-client and work product privileges. Our Supreme Court explained the importance of shielding work product from discovery:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that ***a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information***, sift what he considers to be the relevant from the irrelevant facts, ***prepare his legal theories and plan his strategy without undue and needless interference***. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. ***This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways***…***Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten***. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. ***The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served***.

*Hickman v. Taylor*, 329 U.S. 495, 510-551 (1947) (emphasis added). The purpose of this privilege is to protect "written materials that lawyers prepare 'in anticipation of litigation,' ensuring that 'lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials.'" *United States v. Williams Companies, Inc.,* 562 F.3d 387, 393 (D.C. Cir. 2009). The communications sought by Netflix fall squarely within the work-product privilege—documents and communications prepared in anticipation of litigation "regarding material litigation decisions." Morehouse Decl. at ¶ 8 (ECF No. 17-2).

Moreover, the attorney-client and work-product privileges extend to all communications under the common interest privilege between Valjakka, his attorney, and AiPi. *See Hunton & Williams v. United States DOJ,* 590 F.3d 272, 274 (4th Cir. 2010) (hereinafter *"Hunton"*); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1298 (D.C. Cir. 1980) (hereinafter "*AT&T*"). The common interest privilege "enables parties with a shared legal interest to pursue a joint legal strategy." *Hunton*, 590 F.3d at 274. The "doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Id.* at 277. The common interest privilege does not require a written agreement, nor does it require that both parties to the communications at issue be co-parties in litigation. *Am. Mgmt. Servs. v. Dep't of the Army*, 703 F.3d 724, 732-733 (4th Cir. 2013). The common interest privilege only requires that there is "an agreement or a meeting of the minds" to treat the communications and/or disclosures as privileged. *Id.* "When the transfer to a party with such common interests is conducted under a guarantee of confidentiality, the case against waiver is even stronger. *AT&T*, at 1299-1300 (emphasis added); *see also Molock v. Whole Foods Mkt. Grp.,* No. 16-cv-02483 (APM), 2019 U.S. Dist. LEXIS 233497, at *3 (D.D.C. Nov. 1, 2019) (finding the existence of the common interest privilege based on the existence of a written agreement).

Here, there is a written agreement between Valjakka and AiPi that they have a "common interest." *See* Morehouse Decl. at ¶¶ 5-6 (ECF No. 17-2). As stated above, consistent with Rule 45, AiPi has provided a description of the agreement through the declaration of Eric Morehouse for purposes of maintaining the privilege.. That being said, AiPi can satisfy its burden to establish the existence of the common interest privilege through the sworn declaration of Eric Morehouse. *Am. Mgmt. Servs.¸* 703 F.3d at 733. And that declaration establishes that Valjakka and AiPi agreed that privileged information and work product would be disclosed to AiPi with the understanding and agreement that privilege would not be waived, and that both parties agreed to uphold the privilege with respect to the information shared between them. Morehouse Decl. at ¶ 6 (ECF No. 17-2). Further, privileged information was only shared with AiPi because there was an agreement that the information would be maintained as confidential and privileged. *Id.*; *see also Netflix Litigation*, ECF No. 251-1 at ¶¶ 3-4, 14. Thus, the subpoena should be quashed as to request no. 4-5 as it seeks the disclosure of information subject to the common interest privilege.

Further, the Court is not treading into unknown waters here. Courts have routinely rejected disclosure concerning litigation funding arrangement. *See e.g.¸Ashghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 197601, at *14 (E.D. Va. May 31, 2016); *Art Akiane LLC v. Art & SoulWorks LLC*, No. 19 C 2952, 2020 U.S. Dist. LEXIS 171682, at *5 (N.D. Ill. Sep. 18, 2020); *Kaplan v. S.A.C. Capital Advisors, L.P., No. 12-CV-9350 (VM)(KNF)*, 2015 U.S. Dist. LEXIS 135031, at *10-17 (S.D.N.Y. Sep. 10, 2015*); Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014). But the Netflix subpoena seeks to do much more than obtain information concerning the funding agreement between AiPi and Valjakka; it seeks to compel all their communications "regarding material litigation decisions" and "attorney fees or sanctions" in the litigation.

Finally, were the Court to accept Netflix's entreaties to compel disclosure of the requested communications and documents it would eviscerate the attorney-client and attorney work-product privileges. In the future, defendants would be forced to disclose all communications amongst defense counsel in a multi-defendant lawsuit. Parties would be forced from working together against a common foe. A party would waive the attorney-client privilege and work product simply by using litigation funding. The very purpose of these privileges is to allow "a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510-551. The purpose of these privileges is to "safeguard[] the fruits of an attorney's trial preparations from the discovery attempts of the opponent" and "protect information against opposing parties." *AT&T*, 642 F.2d at 1299. It would also lead to ancillary litigation having no bearing on any issue that will be tried in the litigation, such as here.

Thus, Netflix's subpoena to AiPi must also be quashed as to request nos. 4 and 5 as those requests seek the disclosure of privileged information.

## IV. CONCLUSION

For the forgoing reasons, AiPi respectfully requests this Court to overrule Netflix's objections, and to affirm the Magistrate Judge's order quashing the subpoena issued by Netflix.


Dated: November 22, 2024                    Respectfully submitted,

                                            KLAPROTH LAW PLLC

                                            */s/* Brendan J. Klaproth
                                            Brendan J. Klaproth  (Va. Bar No. 97494)
                                            2300 Wisconsin Ave NW
                                            Suite 100A
                                            Washington, DC 20007
                                            Tel:    202-618-2344
                                            Email: bklaproth@klaprothlaw.com
                                            *Counsel for AiPi, LLC*